IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DAKTARI HARRIS,**

        **Plaintiff,**

    **v.**                                    **Civil Action No. 3:24cv799**

**PIEDMONT REGIONAL JAIL
AUTHORITY,** *et al.,*

        **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Dismiss by Superintendent Townsend, Security Chief Eanes, and Piedmont Regional Jail Authority (the "Motion to Dismiss" or "Motion"). (ECF No. 8.)[1] Plaintiff Daktari Harris responded in opposition to the Motion, (ECF No. 14), and Defendants Superintendent Townsend, Security Chief Eanes, and Piedmont Regional Jail Authority ("PRJA") replied, (ECF No. 15).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant in part and deny in part the Motion. (ECF No. 8.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

### A.    Factual Allegations[2]

"On November 22, 2022, [Mr. Harris] was a pre-trial detainee being held in the B-Pod of [Piedmont Regional Jail] awaiting transfer and trial in North Carolina." (ECF No. 1 ¶ 11.)  At the time, Correctional Officer ("CO") "Marquis Garner . . . was employed by [Piedmont Regional Jail Authority ("PRJA")] as a correctional officer." ("CO Garner") (ECF No. 1 ¶ 5.)  PRJA "is a regional jail authority established . . . to manage the Piedmont Regional Jail." (ECF No. 1 ¶ 3.)  Jerry Townsend was the Superintendent of PRJA. ("Superintendent Townsend") (ECF No. 1 ¶ 6.)  Royal Eanes was a Major and the Chief of Security of PRJA.  ("Security Chief Eanes") (ECF No. 1 ¶ 7.)

"On November 22, 2022, at approximately 7:20 [a.m.], [Mr. Harris] had just arrived back in the B-Pod of [Piedmont Regional Jail]" after meeting with his attorney.  (ECF No. 1 ¶ 12.)  When he arrived back to the B-Pod, Mr. Harris "was confronted by . . . [CO] Garner", who was alone.  (ECF No. 1 ¶¶ 13–14.)  CO Garner told Mr. Harris to "'lock down.'"  (ECF No. 1 ¶ 15.)  Mr. Harris "had in his hands documents from his attorney."  (ECF No. 1 ¶ 16.)  "[A]fter a brief exchange with [CO] Garner, [Mr. Harris] bent to pick up documents he had dropped."  (ECF No. 1 ¶ 17.)

As Mr. Harris "remained bent to retrieve his documents, Defendant Garner, suddenly, and without warning, assaulted [Mr. Harris] in the face with Oleoresin Capsicum, painfully surprising [Mr. Harris] and rendering him temporarily blind."  (ECF No. 1 ¶ 18.)  "Directly after

---

[2] In considering the Motion, (ECF No. 8), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Mr. Harris.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

spraying [Mr. Harris] in the face, Defendant Garner suddenly and violently physically assaulted [Mr. Harris], pushing and dragging [him] through the B Pod doorway and into the hall separating the A and B Pods." (ECF No. 1 ¶ 19.) "Defendant Garner bit the left ear of [Mr. Harris], lacerating and separating [Mr. Harris's] left ear lobe." (ECF No. 1 ¶ 20.) "At that time and place, [Piedmont Regional Jail] correctional officers Aaron Rande, Markus Calhoun, James Caddell, and Anderson Vaughan reported to the scene of the assault and assisted Defendant Garner in further incapacitating [Mr. Harris.]" (ECF No. 1 ¶ 21.)

"Directly following the assault, [Mr. Harris] was evaluated by [Piedmont Regional Jail] Nurse Kemball and was subsequently transported to Centra Southside Community Hospital where he received treatment and seven . . . stitches to reattach and repair [his] left earlobe which had become lacerated and detached in the assault and bite inflicted by Defendant Garner."[3] (ECF No. 1 ¶ 22.)

"Within the 12 months prior to Defendant Garner's assault of [Mr. Harris] . . . Defendant Garner was found responsible for an incident of excessive force against a resident while he was employed at the Virginia Center for Behavioral Rehabilitation." (ECF No. 1 ¶ 24.) "Directly after the finding of excessive force at [the Virginia Center for Behavioral Rehabilitation], Defendant Garner left his job . . . and was hired by [Piedmont Regional] Jail Authority as a correctional officer." (ECF No. 1 ¶ 25.)

---

[3] Mr. Harris's Complaint contains "[a] photograph of the laceration to [Mr. Harris's] left earlobe taken by [Piedmont Regional Jail] staff." (ECF No. 1 ¶ 23.)

**B.    Procedural Background**

On November 7, 2024, Mr. Harris filed the Complaint alleging the following causes of

action:

| | | |
|---|---|---|
| **Count I:** | **42 U.S.C. § 1983** | **Excessive Force**<br>(against CO Garner and PRJA) |
| **Count II:** | **42 U.S.C. § 1983** | ***Monell* Liability**<br>(PRJA, Superintendent Townsend, Security Chief<br>Eanes) |
| | | **Failure to Screen**<br>**Failure to Train**<br>**Improper Custom, Practice, or Policy** |
| **Count III:** | **42 U.S.C. § 1983** | **Supervisory Liability**<br>(Superintendent Townsend and Security Chief<br>Eanes) |
| **Count IV:** | | **State Law Battery**<br>(CO Garner) |
| **Count V:** | | **Negligence  (Withdrawn)[4]**<br>(against PRJA) |

(ECF No. 1, at 5–12.)  On December 5, 2024, Superintendent Townsend, Security Chief Eanes,

and PRJA filed the Motion to Dismiss.[5]  (ECF No. 8.)  Mr. Harris timely responded, (ECF No.

14), and Superintendent Townsend, Security Chief Eanes, and PRJA replied, (ECF No. 15).[6]

---

[4] In his Opposition to the Motion to Dismiss, Mr. Harris withdraws Count V.  (ECF No. 14, at 1 ("Plaintiff concedes on Defendants[']s Motion to Dismiss as to Count V of Plaintiff's complaint.").)  The Court will dismiss Count V.

[5] On December 6, 2024, Mr. Harris returned to the Court executed summonses for PRJA, Superintendent Townsend, and Security Chief Eanes, each reflecting a service date of November 14, 2024.  (ECF No. 10, at 2; ECF No. 11, at 2; ECF No. 13, at 2.)  Thus, the Motion to Dismiss was timely.

[6] On February 10, 2025, Mr. Harris returned to the Court an executed summons for CO Garner, reflecting a service date of January 29, 2025.  (ECF No. 18, at 2.)  On March 11, 2025, the Court granted CO Garner's Consent Motion for Leave to File Late Responsive Pleadings to

For the reasons articulated below, the Court will grant in part and deny in part the Motion to Dismiss.  (ECF No. 8.)

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted).  The court must assume all well-pleaded factual

---

Complaint.  (ECF No. 22.)  On March 11, 2025, CO Garner timely filed an Answer.  (ECF No. 23.)

allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III.  Analysis

The Motion to Dismiss seeks relief on the following grounds:  (1) Mr. Harris fails to state a claim under 42 U.S.C. § 1983 for excessive force (Count I); (2) Mr. Harris fails to state a claim for *Monell* liability under 42 U.S.C. § 1983 (Count II); and (3) Mr. Harris fails to state a claim for failure to supervise under a theory of supervisory liability (Count III).  (ECF No. 9, at 9–15.)[7] The Court will address each argument in turn.

### A.    Mr. Harris Fails to State a Claim for Excessive Force Under 42 U.S.C. § 1983 in Count I as to PRJA

Count I is alleged against CO Garner and PRJA, but CO Garner timely filed an Answer. (ECF No. 23.)  Thus, for the purposes of ruling on the instant Motion to Dismiss, the Court will analyze Count I only as it pertains to PRJA.

---

[7] Mr. Harris brings four remaining claims:  Counts I, II, and III are claims under 42 U.S.C. § 1983 and Count IV is a state law claim of Battery against CO Garner.  Because Count IV is asserted only against CO Garner and he has answered the Complaint, the Court does not discuss Count IV here.  (*See* ECF No. 1, at 10–11.)

1.    **Legal Standard:  § 1983 Claim for Excessive Force Under the Fourteenth Amendment**

Section 1983 prohibits constitutional violations by persons acting under the color of state law. *See* 42 U.S.C. § 1983[8]; *Brown v. Middleton*, 362 F. App'x 340, 343 (4th Cir. 2010). Importantly, because "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "'To succeed on a § 1983 claim, a plaintiff must prove by a preponderance of the evidence that:  (1) the defendant engaged in conduct which deprived plaintiff of a federal constitutional or statutory right, (2) that the defendant was acting under color of law, and (3) that the acts of that defendant proximately caused the plaintiff's damages.'" *Smith v. Town of South Hill*, 611 F. Supp. 3d 148, 169 (E.D. Va. 2020) (quoting *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 747 (E.D. Va. 2016)).

The Fourteenth Amendment[9] "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive

---

[8] 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

[9] PRJA argues that the Court should dismiss Mr. Harris's claim for excessive force because Mr. Harris did not identify in his Complaint the specific constitutional amendment under which he sues. (ECF No. 9, at 3–4, 6.)  In response, Mr. Harris contends that the Fourth Amendment's "reasonableness" standard should apply.  (ECF No. 14, at 4–5 (citing *Graham v.*

7

in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (quoting

*Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). "[P]retrial detainee[s] must show only that

the force purposely or knowingly used against [them] was objectively unreasonable." *Kingsley*,

576 U.S. at 396–97.

Factors a court may consider to determine whether force was objectively unreasonable

may include:

> [1] the relationship between the need for the use of force and the amount of force
> used; [2] the extent of [the detainee's] injury; [3] any effort made by the officer to
> temper or to limit the amount of force; [4] the severity of the security problem at
> issue; [5] the threat reasonably perceived by the officer; [6] and whether the
> [detainee] was actively resisting.

*Kingsley*, 576 U.S. at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"[O]fficers facing disturbances 'are often forced to make split-second judgments.'" *Id.* at

399 (citing *Graham*, 490 U.S. at 397). Consequently, courts "must judge the reasonableness of

the force used from the perspective and with the knowledge of the defendant officer." *Id.*

(citation omitted) (internal quotation mark omitted). Courts must also recognize that "agents of

the state are permitted to exercise a certain degree of force in order to protect the interests of

society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013) (quoting *Justice v. Dennis*,

---

*Connor*, 490 U.S. 386 (1989).) However, "[t]he Fourth Amendment [only] governs claims of
excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person.'"
*Orem v. Rephrann*, 523 F.3d 442, 446 (4th Cir. 2008), *abrogated on other grounds by Wilkins v.
Gaddy*, 559 U.S. 34 (2010). Indeed, the Fourth Circuit has "made clear that Fourth Amendment
protections do not extend to arrestees or pretrial detainees," and that "excessive force claims of a
pretrial detainee [or arrestee] are governed by the Due Process Clause of the Fourteenth
Amendment." *Orem*, 523 F.3d at 446 (citations omitted).

Here, it is undisputed that Mr. Harris was a "pre-trial detainee being held in the B-Pod of
the [Piedmont Regional Jail] awaiting transfer and trial in North Carolina" at the time of the
underlying incident. (ECF No. 1 ¶ 11.) Mr. Harris's excessive force claim is therefore governed
by the Fourteenth Amendment, not the Fourth Amendment, and the Court analyses his claim
under the Fourteenth Amendment standard set out above.

834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may later seem unnecessary" is serious enough to rise to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).

As such, Courts "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cnty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). The determination of whether excessive force was used must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

### 2. Mr. Harris Fails to State a Claim for Excessive Force Under 42 U.S.C. § 1983 in Count I Against PRJA Because He Fails to Allege Any Action by PRJA

As a threshold matter, PRJA is a "person" for § 1983 purposes. *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F.Supp.2d 558, 573–74 (E.D. Va. 2011) (vacated in part on other grounds) ("[T]he PRJA is a local government unit, and therefore[] can be sued directly under § 1983") (internal quotation marks and citation omitted) (brackets in original); *see also Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) (holding that a regional jail authority "is not an arm

of the State for purposes of Eleventh Amendment immunity[10]*").[11]   Therefore, PRJA is

amenable to suit under § 1983.

In Count I, Mr. Harris alleges that "Defendants Garner and [PRJA] purposely and

knowingly used force against Plaintiff as detailed in the foregoing [p]aragraphs of this Complaint

that was objectively unreasonable." (ECF No. 1 ¶ 30.) However, the Complaint contains no

specific allegations regarding actions taken by PRJA. (*See* ECF No. 1 ¶¶ 11–25.) Rather, Mr.

Harris alleges that "*Defendant Garner* . . . assaulted the Plaintiff in the face with Oleoresin

Capsicum", "push[ed] and dragg[ed] the Plaintiff through the B Pod doorway", and "bit [Mr.

Harris's] left ear." (ECF No. 1 ¶¶ 18–20 (emphasis added).)

As to PRJA, Mr. Harris alleges only that CO Garner "was employed by [PRJA] as a

correctional officer and acted under the color of state and/or local law, and within the scope of

his employment at all times relevant to this suit." (ECF No. 1 ¶ 5.) Mr. Harris contends that

"based on this fact alone", he "has sufficiently ple[d] a violation of both elements of his § 1983

claim." (ECF No. 14, at 4.) However, "a municipality cannot be held liable *solely* because it

employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on

---

[10] "Section 1983 provides a federal forum to remedy many deprivations of civil liberties,
but it does not provide a federal forum for litigants who seek a remedy against a State for alleged
deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).
"Whether the PRJA is a 'person' under § 1983 depends on whether or not the PRJA is an arm of
the State for purposes of Eleventh Amendment immunity. Although Eleventh Amendment
immunity and 'personhood' under § 1983 are distinct issues, they are analytically tied: both turn
on whether a governmental entity is so closely intertwined with the State as to be able to invoke
the same protections as the State itself." *Newbrough*, 822 F.Supp.2d at 571.

[11] This Court is aware of the contrary determination in an earlier Fourth Circuit decision
that "Piedmont Regional Jail is not a 'person' and is therefore not amenable to suit under
§ 1983." *Preval v. Reno*, No. 99-6950, 2000 WL 20591, at *1 (4th Cir. Jan. 13, 2000). Because
*Kitchen* (a published decision) was decided two years after *Preval* (an unpublished decision) and
deals with a regional jail authority as opposed to a regional jail, the Court recognizes *Kitchen* as
controlling.

a *respondeat superior* theory." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553–54 (4th Cir. 2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Mr. Harris fails to plead any facts to support his conclusory allegation that "[PRJA] purposely and knowingly used force against [Mr. Harris]." (ECF No. 1 ¶ 30.) Thus, Mr. Harris has failed to state a claim against PRJA for excessive force under § 1983. The Court will dismiss Count I against PRJA.

### B.  Mr. Harris Narrowly States a Claim of *Monell* Liability Under 42 U.S.C. § 1983 For Failure to Screen Against PRJA in Count II

In Count II, Mr. Harris alleges that PRJA, Superintendent Townsend, and Security Chief Eanes violated § 1983 based on:  (1) failure to adequately "screen their employees, including Defendant Garner, for any prior history of excessive force against their charges prior to hiring"; (2) "fail[ure] to adequately train or otherwise direct their employees concerning the constitutional rights of persons", and (3) "fail[ure] to adequately discipline or sanction employees, such as Defendant Garner, for violations of the constitutional rights of persons." (ECF No. 1 ¶¶ 37–38, 41.)

As a threshold matter, the Complaint does not specify whether Mr. Harris brings Count II against Superintendent Townsend and Security Chief Eanes in their official or individual capacities.  In their Motion to Dismiss, Defendants state that "the nature of the relief [Mr. Harris] seeks reflects that he is suing them in their individual capacities." (ECF No. 9, at 7 n.10.) However, in his Opposition, Mr. Harris states that he "pursues a *Monell* liability claim against Defendants Townsend and Eanes not in each Defendant's individual capacity, but in their capacities as arms of [PRJA] and entities exercising [PRJA's] final decision-making power." (ECF No. 14, at 5–6.)  Mr. Harris contends that the Complaint "makes this clear by referencing

11

the job titles of Defendants Townsend and Eanes . . . and by the very fact that Plaintiff included [them] in his *Monell* liability claim." (ECF No. 14, at 6.)

The Court will dismiss the official capacity *Monell* claim in Count II against Superintendent Townsend and Security Chief Eanes because they are redundant of Mr. Harris's *Monell* claim against PRJA. "Official[] capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to respond, an official[] capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citations omitted).

Here, Mr. Harris brings his claims against PRJA in addition to the individual official capacity claims against individual PRJA defendants Superintendent Townsend and Security Chief Eanes. PRJA, the entity that employs Superintendent Townsend and Security Chief Eanes, clearly has received notice of this matter because it has moved to dismiss the case against it in the Motion to Dismiss. Because Mr. Harris's official capacity claims against Superintendent Townsend and Security Chief Eanes are redundant of his claim against PRJA, the Court will dismiss the Count II Official Capacity claims against Superintendent Townsend and Security Chief Eanes.

The Court now turns to each basis for Mr. Harris's *Monell* liability claim against PRJA.

### 1.    <u>Legal Standard:  *Monell* Liability</u>

"For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter*, 897 F.3d at 553 (citing *Monell*, 436 U.S. at 690). Although an underlying constitutional violation is a *necessary* element of municipal liability, it is not *sufficient*: "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Instead, liability will arise only "when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible [for] under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694). "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

The United States Court of Appeals for the Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). The Complaint attempts to establish *Monell* liability against PRJA under the third and fourth avenues: deliberate indifference through failure to adequately screen and train agents and improper custom.[12] (ECF No. 1, at 7–9.)

---

[12] Mr. Harris claims a § 1983 violation based on "custom, practice, or policy" of failure to adequately train employees and failure to adequately discipline or sanction employees. (ECF No. 1 ¶¶ 37–41.) While Mr. Harris uses the word "policy," he does not allege the existence of an "express policy, such as a written ordinance or regulation." *See Lytle*, 326 F.3d at 471. As a result, the Court declines to analyze this claim under the first avenue of demonstrating municipal liability: express policy.

### a.    Deliberate Indifference Due to Failure to Screen

"A § 1983 claim premised on a 'single hiring decision' is 'viable only if the [employer] was deliberately indifferent towards how its hiring decision could lead to a deprivation of federal rights.'" *Tupea v. Kline*, 736 F.Supp.3d 381, 386 (E.D. Va. 2024) (quoting *Jones v. Mullins Police Dept.*, 355 F. App'x 742, 747 (4th Cir. 2009) (brackets in original). "A failure to screen is deliberately indifferent '[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)). "'The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.'" *Id.* (quoting *Brown*, 520 U.S. at 412).

### b.    Deliberate Indifference Due to the Failure to Train

A municipality's failure to train may support § 1983 liability where the failure "amounts to deliberate indifference," and is the "moving force [behind] the constitutional violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989) (internal quotations omitted). This municipal liability theory thus has two components in addition to an underlying constitutional violation:  deliberate indifference and causation.

To amount to "deliberate indifference," a failure to train must reflect the municipality's "deliberate" or "conscious" choice. *Id.* at 379.  A "deliberate" choice requires that the municipality have "fair *notice* that subordinates are engaged in constitutional or statutory deprivations," and regardless "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004).  Plaintiffs may establish deliberate indifference in two ways.  First, they may show that "policymakers were aware of, and

acquiesced in, a pattern of constitutional violations." *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (quoting *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F.Supp.3d 721, 726 (E.D. Va. 2014)). Second, they may demonstrate that the municipality has failed to train its employees on "an obvious constitutional duty that particular employees are certain to face." *Id.* at 538 (quoting *Gallimore*, 38 F. Supp. 3d 726). This second method is limited, however, to a "narrow scope" of constitutional duties. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011).

A plaintiff must also demonstrate a "causal nexus" between the deficient training and the alleged constitutional violation. *Brown*, 308 F. Supp. 2d at 694. Generally, a plaintiff cannot demonstrate a causal connection "by proof of a single incident of unconstitutional activity alone." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). Rather, a plaintiff must show that the "deficiency in training actually caused" the violation. *Canton*, 489 U.S. 378, 391. However, in limited cases, a single incident can constitute support for a causal connection where the constitutional duty is so obvious that without proper training, "the specific violation [was] 'almost bound to happen, sooner or later.'" *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

### c.    <u>Deliberate Indifference Under a Custom or Practice</u>

Plaintiffs may also sue municipalities for constitutional deprivations "pursuant to governmental 'custom,' even though such a custom has not received formal approval through the body's official decision[-]making channels." *Monell*, 436 U.S. at 690. To determine whether a practice is persistent enough to constitute a custom with the force of law, a plaintiff must demonstrate that the "duration and frequency" of the practice "indicate[s] that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their

'deliberate indifference.'" *Owens v. Baltimore City State Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (internal citations omitted). Finally, the plaintiff must identify "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385.

A plaintiff may establish a custom or practice under *Monell* by relying on a failure to discipline prior bad acts. *Spell*, 824 F.2d at 1389–90. This is also known as "condonation." *Id.* at 1390. A failure to discipline claim requires a plaintiff to prove a "'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1386–91). Both knowledge and deliberate indifference depend on the "extent" of prior misconduct. *Id.* at 402–03 (quoting *Spell*, 824 F.2d at 1391). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell*, 824 F.2d at 1387); *see also Green v. Mills*, No. 3:19CV906 (MHL), 2020 WL 2850177, at *11 (E.D. Va. June 2, 2020) ("'Evidence of a single instance in which there was a failure to discipline is insufficient.'") (quoting 13 Am. Jur. Proof of Facts 3d 1, § 12 (2020)). Finally, a plaintiff must demonstrate that the municipality's failure to address the misconduct through appropriate disciplinary measures caused the plaintiff's injury. *Spell*, 824 F.2d at 1389.

### 2.    Mr. Harris Sufficiently Alleges PRJA's Deliberate Indifference Due to Failure to Screen in Count II

The Complaint presents sufficient facts to establish *Monell* liability against PRJA under a failure to adequately screen theory. Mr. Harris alleges that "[i]t was the custom, practice, or policy of [PRJA]" "to inadequately screen their employees, including Defendant Garner, for any

16

prior history of excessive force against their charges prior to hiring." (ECF No. 1 ¶ 41.) Mr. Harris alleges that PRJA "consciously disregarded Defendant Garner's history of excessive force violations in deciding to hire him for his position with the [PRJA] prior to his assault of [Mr. Harris]." (ECF No. 1 ¶ 42.) Mr. Harris adds that PRJA was "aware that Defendant Garner had been previously investigated for claims and allegations of excessive force, relating to an incident at the Virginia Center for Behavioral Rehabilitation (hereinafter 'VCBR') in August of 2022", was "aware of prior findings that had been made against Defendant Garner for use of excessive force" and was "aware of prior claims – both investigated and uninvestigated – that had been made against Defendant Garner for use of excessive force while [he] was working at the VCBR and other facilities." (ECF No. 1 ¶¶ 44–46.) Specifically, Mr. Harris asserts that "[w]ithin the 12 months prior to Defendant Garner's assault of the Plaintiff . . . Defendant Garner was found responsible for an incident of excessive force against a resident while he was employed at the [VCBR] in Burkeville[,] Virginia." (ECF No. 1 ¶ 24.) Viewed favorably, at this juncture these allegations state a claim, sufficiently and above a speculative level, for deliberate indifference due to failure to adequately screen.

In the Motion to Dismiss, Defendants contend that Mr. Harris's "vague, conclusory, allegations as to an incident at the Virginia Center for Behavioral Rehabilitation are not sufficient to state a *Monell* claim." (ECF No. 9, at 11.) However, the cases Defendants cite in support of that assertion are distinguishable from the case at bar. In *Jones v. Mullins Police Department*, the United States Court of Appeals for the Fourth Circuit stated that the plaintiff's "claim against the Department [] that [a police officer] had been reprimanded in the past while working for a different police department" "is clearly insufficient to support a claim under . . . *Monell*." 355 F. App'x 742, 748 n.5 (4th Cir. 2009). But rather than a vague assertion of an

unspecified reprimand, Mr. Harris alleges that "[w]ithin the 12 months prior to Defendant

Garner's assault of the Plaintiff . . . Defendant Garner was found responsible for an incident of

excessive force against a resident while he was employed at the [VCBR] in Burkeville[,]

Virginia." (ECF No. 1 ¶ 24.) Regarding *Monell* claims premised on deliberate indifference due

to failure to screen, the Supreme Court has stated,

> [A] finding of culpability simply cannot depend on the mere probability that any
> officer inadequately screened will inflict any constitutional injury. Rather, it must
> depend on a finding that *this* officer was highly likely to inflict the *particular* injury
> suffered by the plaintiff. The connection between the background of the particular
> applicant and the specific constitutional violation alleged must be strong.

*Bd. of Cnty. Com'rs*, 520 U.S. at 412 (emphasis in original). At this juncture, where the Court

"'must accept as true all of the factual allegations contained in the complaint' and 'draw all

reasonable inferences in favor of the plaintiff'", *Kensington Volunteer Fire Dep't,* 684 F.3d at

467, Mr. Harris has plausibly alleged a sufficient connection between Mr. Garner's background

and the specific constitutional violation alleged—excessive force.

Defendants also cite *Khattab v. Janowski*, in which the court dismissed plaintiffs' *Monell*

claims in part because "Plaintiffs have not adduced sufficient facts to demonstrate . . . that the

City knew about and acquiesced in or condoned a pattern of violations." No. 3:23cv737 (RCY),

2024 WL 1889841, at *8 (E.D. Va. Apr. 30, 2024). In so doing, the court found instructive

*Wynn v. City of Richmond*, writing that, in *Wynn*, "[r]ather than pleading specific facts in support

of her *Monell* claim, [the plaintiff] 'merely claim[ed] that [the City] employ[ed] and retain[ed] as

police officers and other personnel . . . whom the City . . . knew or reasonably should have

known had dangerous propensities for abusing their authority and mistreating citizens.'"

*Khattab*, 2024 WL 1889841, at *7 (citing *Wynn v. City of Richmond*, No. 3:21cv530 (MHL),

2022 WL 2318497, at *12 (E.D. Va. June 28, 2022) (alterations in original)).  "However, Wynn

failed to include 'a single additional allegation to support this contention.'"  *Id.*

In contrast to Wynn, Mr. Harris alleges that "[w]ithin the 12 months prior to Defendant

Garner's assault of the Plaintiff . . . Defendant Garner was found responsible for an incident of

excessive force against a resident while he was employed at the [VCBR] in Burkeville[,]

Virginia."  (ECF No. 1 ¶ 24.)  Mr. Harris adds that PRJA was "aware of prior findings that had

been made against Defendant Garner for use of excessive force" and "consciously disregarded

Defendant Garner's history [within the prior twelve months] of excessive force violations in

deciding to hire him for his position with the [PRJA] prior to his assault of [Mr. Harris]."  (ECF

No. 1 ¶¶ 42, 45.)  Thus, unlike in the cases cited by Defendants, Mr. Harris has included specific

allegations against both Mr. Garner and the PRJA that, viewed favorably, sufficiently support his

claim of deliberate indifference due to failure to adequately screen.

This is true even though the United States Supreme Court has determined that

"'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Com'rs of Bryan Cnty.*,

520 U.S. at 410.  The standard is particularly stringent when the alleged deliberate indifference is

premised on failure to adequately screen just one applicant.  *Id.* at 410 ("Unlike the risk from a

particular glaring omission in a training regimen, the risk from a single instance of inadequate

screening of an applicant's background is not 'obvious' in the abstract; rather, it depends upon

the background of the applicant.").  However, the Supreme Court has left open the possibility

that a *Monell* claim based on failure to adequately screen may be premised on a single decision

to hire that is attributable to a municipality.  *Board of County Com'rs of Bryan County*, 520 U.S.

at 405 ("To the extent that we have recognized a cause of action under § 1983 based on a single

decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation.").  In sum, viewing the allegations in the light most favorable to Mr. Harris, the Complaint plausibly alleges a claim of inadequate screening as to just one hiring decision, because Mr. Harris specifically asserts that Mr. Garner had been guilty of an incident of excessive force against a resident of the Virginia Center for Behavioral Rehabilitation within twelve months of the assault alleged at bar, and PRJA knew it.

Thus, Mr. Harris narrowly states a claim for *Monell* liability against PRJA based on deliberate indifference due to failure to adequately screen in Count II.

### 3.    Mr. Harris Insufficiently Alleges Deliberate Indifference Due to Failure to Train Against PRJA in Count II

The Complaint fails to set forth sufficient facts to establish *Monell* liability against PRJA pursuant to a failure to train theory.  Viewed favorably, Mr. Harris alleges that that PRJA "with deliberate indifference failed to adequately train or otherwise direct their employees concerning the constitutional rights of persons, such as the Plaintiff, and has caused Defendant Garner in this matter to engage in unlawful conduct."  (ECF No. 1 ¶ 37.)  Mr. Harris adds that "[i]t was the custom, practice or policy of [PRJA]" "to inadequately train their employees, including Defendant Garner, failing to adequately discourage constitutional violations on the part of their employees."  (ECF No. 1 ¶ 40.)  However, Mr. Harris offers no specific factual allegations regarding training at PRJA.

Mr. Harris's allegations regarding PRJA's failure to train constitute the same type of legal conclusions and formulaic recitation of the elements of a claim that other courts within this district have already held cannot survive a motion to dismiss.  For instance, in *Lee v. City of Richmond* (a case involving troubling facts), the plaintiff attempted to establish *Monell* liability

20

on behalf of Richmond by, among other things, arguing that the City inadequately trained its officers. No. 3:12cv471 (REP), 2013 WL 1155590, at *1 (E.D. Va. Mar. 19, 2013). Lee averred that: "(1) the training was inadequate . . . ; (2) the inadequate training constitute[d] deliberate indifference . . . ; and (3) the risk of constitutional injury as a result of such deliberate indifference . . . is very obvious." *Id.* at *7 (internal quotation marks omitted) (second and fourth alterations in original). The *Lee* court concluded that these scant allegations were inadequate to impose liability upon the City, as they were "the exact type of 'labels and conclusions and a formulaic recitation of the elements of a cause of action' that *Twombly* says 'will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court more precisely concluded that Lee had "not alleged any, much less sufficient, facts to render 'plausible' a claim . . . that the 'violation of a federal right [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (second alteration in original) (quoting *Hill v. Robeson Cnty.*, 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010)); *accord Brown v. Cobb*, No. 3:17cv627 (JAG), 2018 WL 3080064, at *3 (E.D. Va. June 21, 2018) (discussing plaintiffs' "vague and conclusory allegations about the City's failure to train").

Mr. Harris's allegations as to PRJA's failure "to adequately train or otherwise direct [its] employees concerning the constitutional rights of persons" are similarly—and fatally—conclusory. As the *Lee* Court articulated, to allow a plaintiff to establish municipal liability by merely reciting the theory's elements would be to "functionally expose the City to *respondeat superior* liability, which has been explicitly foreclosed by *Monell*." *Lee*, 2013 WL 1155590, at *7. Mr. Harris's allegations amount to a recitation of the elements of the claim. Accordingly, his failure to train theory alleged in Count II must fail.

#### 4.    Mr. Harris Insufficiently Alleges Deliberate Indifference Due to an Improper Practice or Custom by PRJA in Count II

Likewise, the Complaint fails to adequately allege that PRJA embraced a practice or custom of the constitutional violations asserted here.  Mr. Harris asserts that PRJA had a "custom, practice, or policy"[13] of "fail[ing] to adequately discipline or sanction employees . . . for violations of the constitutional rights of persons" rests on labels and conclusions.  (ECF No. 1 ¶ 38.)  Because his allegations end there, Mr. Harris cannot pursue a *Monell* claim of an improper custom, practice or policy against PRJA.  Fourth Circuit precedent demands this finding.

For instance, in *Owens*, Mr. Owens alleged that the Baltimore City Police Department ("BCPD") violated his constitutional rights by intentionally withholding exculpatory evidence resulting in his wrongful conviction, for which he served over twenty years in prison.  *Owens v. Baltimore City State Attorney's Office*, 767 F.3d 379, at 385, 387 (4th Cir. 2014).  Owens plausibly alleged that officers investigating him repeatedly withheld exculpatory statements by another suspect who became a government witness.  Owens asserted that this withholding resulted from a "'custom, policy, and/or practice' of [BCPD] condoning its officers' conduct in 'knowingly, consciously, and repeatedly with[holding] and suppress[ing]' exculpatory evidence."  *Id.* at 402 (second and third alterations in original).  Crucially, the Fourth Circuit found that Owens' allegation that BCPD had "reported and unreported cases. . . of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions" was sufficient to

---

[13] As discussed, Mr. Harris identifies no express PRJA policy "embodied in written ordinances or regulations," *Moody*, 93 F. Supp. 3d at 531, that violated his constitutional rights. Thus, his assertion that a "policy" violated his rights, (ECF No. 1 ¶¶ 38–39), without identifying any specific policy constitutes a "mere conclusory statement[]" that is "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

render his *Monell* claim "plausible on its face." *Id.* at 403 (internal quotations omitted). The Court noted that these specific allegations were integral to the Plaintiff's success. *Id.* ("Owens has done more than [allege mere conclusions]: Owens has alleged facts . . . which, if true, would buttress his legal conclusion.").

 *Moody v. City of Newport News* similarly illustrates how plaintiffs asserting an "unconstitutional custom" theory under *Monell* must at least allege *some* facts supporting the existence of the custom beyond mere "labels and conclusions." *Moody v. City of Newport News*, 93 F. Supp. 3d at 516, 542 (E.D. Va. 2015). There, Moody brought a § 1983 claim based on officers' alleged use of excessive force when repeatedly shooting into Moody's car, claiming that the City "maintained customs . . . amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." *Id.* at 543 (internal quotations omitted). While the court found this assertion conclusory by itself, it ultimately concluded that Moody's allegation regarding a specific 2007 shooting that resulted in death, in combination with more general allegations of routine failure to investigate excessive force claims, were sufficient to facially demonstrate a custom of "failing to adequately investigate excessive force claims." *Id.* at 543 (internal quotations omitted).

 In contrast, Mr. Harris's Complaint is bereft of facts to plausibly allege an improper custom of failing to adequately discipline or sanction employees. A failure to discipline claim requires a plaintiff to prove a "'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens*, 767 F.3d at 402 (quoting *Spell*, 824 F.2d at 1386–91). Additionally, a plaintiff must demonstrate that the municipality's failure to address the misconduct through appropriate

23

disciplinary measures caused the plaintiff's injury. *Spell*, 824 F.2d at 1389. Mr. Harris has failed to allege facts regarding even one instance of PRJA's failure to address misconduct through appropriate disciplinary measures—much less allege that any such failure caused Mr. Harris's injury. Accordingly, Mr. Harris's theory regarding a custom or practice of failure to discipline must fail.

### C. Mr. Harris Fails to State a Claim for Supervisory Liability Under 42 U.S.C. § 1983 in Count III Against Superintendent Townsend and Security Chief Eanes

The Court now turns to Count III—Mr. Harris's claim against Superintendent Townsend and Security Chief Eanes under a theory of supervisory liability. Because Mr. Harris fails to allege sufficient facts to satisfy the first element of a supervisory liability claim, the Court will dismiss Count III.

#### 1. Legal Standard: Supervisory Liability Under 42 U.S.C. § 1983

Under Section 1983, "supervisors can be held liable 'in their individual capacities' only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Harbeck v. Smith*, 814 F. Supp. 2d 608, 626–27 (E.D. Va. 2011) (quoting *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished per curiam opinion)).

To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

The first element, which involves actual or constructive knowledge, can be satisfied by showing: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citations omitted).

The second element requires the plaintiff to show "deliberate indifference to or tacit authorization of the alleged offensive practices." *Shaw*, 13 F.3d at 799. A plaintiff may establish deliberate indifference by "demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). Establishing deliberate indifference involves carrying "a heavy burden of proof" because deliberate indifference cannot be established by "pointing to a single incident or isolated incidents." *Id.* To hold a supervisor liable under a tacit authorization theory requires pleading facts supporting the inference that the "supervisor fail[ed] to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (citation omitted). Furthermore, the standard for establishing deliberate indifference recognizes that a supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of . . . properly trained employees [with] no basis upon which to anticipate the misconduct." *Shaw*, 13 F.3d at 799 (citation omitted).

Finally, the third element requires a showing of causation. A plaintiff can show causation by demonstrating "an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citation omitted). "This concept encompasses cause in fact and proximate cause . . . [and] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his [or her] actions." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984)).

### 2. Mr. Harris Does Not Allege Knowledge by Superintendent Townsend or Security Chief Eanes of a Pervasive and Unreasonable Risk of Constitutional Injury to Him

Mr. Harris fails to state a claim against Superintendent Townsend and Security Chief Eanes under a theory of supervisory liability because he fails to plausibly allege that either defendant had knowledge of conduct by Mr. Garner that posed "a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Baker v. Stover*, No. 3:23cv710 (MHL), 2024 WL 4122036, at *9 (E.D. Va. Sept. 6, 2024) (quoting *Shaw*, 13 F.3d at 799). Mr. Harris plausibly alleges only that Superintendent Townsend and Security Chief Eanes had knowledge of one incident of conduct by Mr. Garner— "that Defendant Garner had been previously investigated for claims and allegations of excessive force relating to an incident at the [VCBR] in August of 2022." (ECF No. 1 ¶ 51.)

Unlike a *Monell* claim based on deliberate indifference due to failure to screen, which may be premised on a single decision attributable to a municipality, *see Board of County Com'rs of Bryan County*, 520 U.S. at 405, a supervisory liability claim under § 1983 requires that a

supervisor have knowledge of "conduct [that] is widespread, or at least has been used on several different occasions." *Baker*, 2024 WL 4122036, at *9. At the time of the November 22, 2022 assault by Mr. Garner against Mr. Harris, the Complaint plausibly alleges that Superintendent Townsend and Security Chief Eanes had knowledge of only one incident of excessive force by Mr. Garner prior to his employment at Piedmont Regional Jail. This is insufficient to establish that Superintendent Townsend and Security Chief Eanes had knowledge of "widespread" conduct or conduct that had been used on "several different occasions." *Baker*, 2024 WL 4122036, at *9 (quoting *Shaw*, 13 F.3d at 799). Thus, even reading his allegations favorably, Mr. Harris's supervisory liability claim fails at element one. *See id.* (granting motion to dismiss § 1983 supervisory liability claim where plaintiff failed to establish element one).

## IV. The Court Will Deny Leave to Amend

In his Opposition, Mr. Harris requests, in the alternative, that "if the Court is inclined to grant a portion or all of Defendants' Motion to Dismiss" that the Court grant him leave to file an Amended Complaint. (ECF No. 14, at 10.) In their Reply, Defendants oppose this request. (ECF No. 15, at 10–11.) Mr. Harris failed to file a motion for leave to amend or present the Court with a proposed Amended Complaint. Mr. Harris has "not met the requirements for filing a request for leave to amend other Federal Rules of Civil Procedure 7(b) and 15(a)[.]" *Employees' Ret. Sys. of the City of Baton Rouge and Parish of East Baton Rouge v. Macrogenics, Inc.*, 61 F.4th 369, 394 (4th Cir. 2023). Thus, the Court will deny Mr. Harris's request for leave to amend.

## V.  Conclusion

For the reasons articulated above, the Court will grant in part and deny in part the Motion

to Dismiss.  (ECF No. 8.)  The Court will dismiss Counts I, III, and V.  The Court will also

dismiss Defendants Superintendent Townsend and Security Chief Eanes from this action.

An appropriate Order shall issue.

Date: 09 / 05 / 2025                        _____/s/_____
Richmond, Virginia                          M. Hannah Lauck
                                            United States District Judge

28